UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| MALIBU MEDIA, LLC, | ) Case No. 2:13-cv-12197 |
| | ) Hon. Gershwin A. Drain |
| Plaintiff, | ) |
| | ) |
| JASON PONTELLO, | ) |
| | ) |
| Defendant. | ) |
| | ) |

| | |
|---|---|
| PAUL J. NICOLLETTI  (P-44419) | JOHN T. HERMANN  (P-52858) |
| Attorney for Plaintiff | Attorney for Defendant |
| 36880 Woodward Ave, Suite 100 | 2684 West Eleven Mile Road |
| Bloomfield Hills, MI 48304 | Berkley, MI 48072 |
| (248) 203-7801 | (248) 591-9291 |

### DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION TO STRIKE AFFIRMATIVE DEFENSES

Plaintiff's current motion presents nearly identical issues that were recently rejected by United States District Judge Robert J. Jonker stating that the appropriate method for challenging the alleged insufficiency of the defenses is via a dispositive motion. (*Malibu Media v. Jeffery Roy Case No. 1:12cv-617* Docket Entry No. 38 – Order Denying Plaintiff's Motion to Strike Affirmative Defenses attached hereto as exhibit 1) In its motion, Plaintiff has moved to strike Defendant's affirmative defenses regarding Plaintiff's alleged fraud, illegality and/or implied license.

I.   INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff Malibu Media maintains that Defendant is liable for copyright infringement based on the unauthorized download and/or exchange of its adult content video works. Along with his answer Defendant filed a copy of the following affirmative defenses (1) contributory negligence; (2) estopple; (3) illegality, fraud, and/or unclean hands; (4) prior license; (5) Plaintiff's works of

pornographic materials are obscene and therefore not copyrightable; (6) Defendants actions if they are determined to be infringing qualify as innocent acts of infringement or de minimis usage; (7) the statutory damages sought by Plaintiff are excessive and/or unconstitutional; and (8) Plaintiff through its participation in the internet exchange of it copyrighted materials consented to acquiesced and/or created an implied license to those individuals who participated in the exchange of its works. Each of these defenses raise questions about Plaintiff's ability to enforce its claims of copyright infringement. Without first seeking concurrence from Defense counsel, Plaintiff's counsel filed the instant motion seeking to strike each of Defendant's affirmative defenses.

Defendant has denied utilizing the BitTorrent file sharing protocol to download or exchange the pornographic materials referenced in Plaintiff's Complaint. (See Exhibit A of Plaintiff's complaint) Plaintiff's entire case is that the alleged exchange and/or distribution of its pornographic videos have been linked to Defendant by virtue of the fact the he is the owner of an internet account whose IP address was linked to the alleged download(s) by Plaitniff's computer forensic expert Tobias Feiser.

Plaintiff's Complaint alleges that Plaintiff's materials (i.e. pornographic video films)[1] were "made available" for distribution through a series of BitTorrent transactions conducted using a computer accessing the internet and identified through an Internet Protocol ("IP") address assigned to the Defendant's internet account. The entirety of these claims hinge upon Plaintiff's purely speculative conclusion that "As the subscriber in control of the IP address being used to distribute Plaintiff's copyrighted movies, ***Defendant is the most likely infringer."*** [Emphasis Added] (Plaintiff's Complaint ¶ 23) Elsewhere in the complaint, Plaintiff alleges that its Computer Investigators (i.e. IPP, Ltd.) identified Defendant's IP address as being associated

---
[1] Plaintiff alleges that 33 of its registered works. (Docket Entry No. 6-1)

with a swarm that was distributing Plaintiff's copyrighted works. (Complaint ¶¶ 16-20)[emphasis added]. This conclusion is prefaced exclusively on a boilerplate declaration executed by the employee of "a company organized and existing under the laws of Germany." (Docket Entry 3-1 at ¶4) (hereinafter "the Feiser Declaration").

The Feiser Declaration, however, provides no information or details whatsoever as to how Plaintiff concluded that Defendant as opposed to other individuals having access to his IP address committed any volitional act of copyright infringement as required to sustain a claim of direct copyright infringement. Accordingly, the allegations in Plaintiff's complaint are based on the assumption that Defendant is the ***actual*** person who utilized the internet account for the aforementioned acts. Neither the Feiser Declaration nor Plaintiff's Complaint provide any allegation that Defendant himself violated any of Plaintiff's rights apart from this conclusory statement.

II.  WHO IS IPP AND WHAT IS THEIR ROLE IN IDENTIFYING IP ADDRESSES ASSOCIATIED WITH ALLEGED ACTS OF INFRINGMENT

An equally pressing topic concerns Plaintiffs affiant IPP.  To identify the IP addresses being used to allegedly infringe the Plaintiff's work, Plaintiff hired IPP International UG ("IPP"), also known as IPP, Ltd. to locale and document infringing copies of its copyright protected works on bit torrent networks. (*Plaintiff's Complaint*, ECF No. 1 ¶¶ 16-20; *Feiser Declaration*, ECF No. 4-2). On the basis of Mr. Feiser's declarations and IPP's records, Plaintiff has filed hundreds of similar complaints in this district and throughout the country against numerous individuals seeking leave of the court to issue subpoenas to ISPs, seeking contact information for the alleged infringers.

For thousands or defendants, Mr. Feiser testifies on behalf of IPP to have "personally" extracted the data, isolated the transactions, analyzed each BitTorrent piece or viewed each of the

movies side by side with digital media files[s] downloaded from each individual all each alleged infringer. (*Feiser Declaration*, ECF No. 4-2 ¶¶ 12, 15-16). It is unclear whether IPP even exists. The address, phone and fax numbers given on its website - www.ippint..de are, in fact, those of 13SAG Bueroservice24 AG-www.bueourosercie24.de - a provider of virtual offices. Given the scarcity of available information regarding IPP, one wonders if it is little more than a shell from under which declarants crawl. Upon available information, IPP 's only other known declarant is Daniel Arheidt, Mr. Arheidt who has filed a number of similar declarations on behalf of IPP see *Voltage Pictures LLC v. Mou Mme UNTEL,* Montreal, Quebec (Aug. 24, 2011 ). Daniel Arheidt is also a declarant for GuardaLey, International ("Guardaley") *see Nu Image, Inc v. Does 1-6,500*, No. 11-cv-0030 1-RLW, ECF No. 5-2 (D.D.C. Feb. 17, 2011)

GuardaLey, like IPP, is a German technology company that monitors and records online instances of alleged copyright infringement of films. Guardaley is located in Karlsruhe. Germany- the same city where Mr. Feiser's declarations for IPP are executed. Similarly, GuardaLey also serves as Voltage's technology company. *See Voltage Pictures LLC v. Does 1-5.000*, 1:10-cv-00873 (D.D.C. 2011). If one also compares the wording of the various declarations of f Feiser, Arheidt and Patrick Achache, GuaradLey's owner, entire portions- and at times the entire document itself- are identical.

On November 18, 2009, Baumgarten Brandt, a law firm who had entered into a relationship with GuardaLey, filed suit after it discovered that Guard a Ley knew of several flaws concerning how they identified defendants, but chose not to disclose them. In its appeal to an injunction brought by GuardaLey, Baumgarten asserted that when identifying alleged infringers. GuardaLey:

    1.  includes mere inquiries, regardless as to whether any file was actually shared;

2. identifies people who neither upload nor download;

3. operates a 'honeypot'- that is they represent "by means of a falsified bit field, that it was always in possession of 50% of the tile being sought" If the actual file is being offered than an implied license is operative. If it is a garbage tile, than no infringement occurs. In either instance. IP addresses are being identified that did not infringe; and

4. does not indicate how it identifies each IP address, so there is no way to discern actual infringers from the innocent.

*Shirokov v. Dunlap, Grubb & Weaver*; et al, No. 10-cv-12043-GAO, ECP Nos. 55, 55-3, 55-10 and 55-11 (D. Mass. June 6, 2011). On May 3, 2011, the State Court of Berlin found the allegations above to be truthful, concluding in part that GuardaLey's evidence gathering technology does not check whether the accused actually downloaded (or uploaded) content and ruled against Guardaley. Shortly after these facts came to light, Guardaley quickly reinvented itself as IPP.[2]

This motion addresses whether the remaining affirmative defenses may give rise to a viable defense to Plaintiff claims. The Court may properly reject the Complaint based on proof of any of these defenses to Plaintiff's claims. Defendant's counsel has asserted a series of affirmative defenses that it believes are applicable to the present situation which include the following (1) Plaintiff's own illegality and/or fraud; (2) prior license to Defendant and/or implied license; (3) of unclean hands; (4) participation, consent, and acquiescence in the alleged infringing activity.

III.   LEGAL STANDARD

Fed R. Civ. P. 12(f) permits the Court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." "The purpose of Rule 12(f) is to save the time and money that would be spent litigating issues that will not affect the outcome

---

[2] A partial list of aliases employed by GuardaLey include: DigiProtect, IP Equity, BP Equity, and BaseProtect. See, e.g. *Baseprotect UG v Does 1- X,* 2:11-cv003621-CCC-JAD (D.N.J. 2011).

of the case." *Kimpton Hotel & Restaurant Group, LLC v. Monaco Inn, Inc.*, No. 07-cv-01514-WDM-BNB, 2008 WL 140488, at *1 (D. Colo. Jan. 11, 2008) (citing United States v. Shell Oil Co., 605 F. Supp. 1064, 1085 (D. Colo. 1985)). Striking a portion of a pleading is a drastic remedy; the federal courts generally view motions to strike with disfavor and infrequently grant such requests. 5C Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1380 (3d ed. 2011). Whether to strike an affirmative defense rests within the discretion of the trial court. *Anderson v. Van Pelt*, No. 09-cv-00704-CMA-KMT, 2010 WL 5071998, at *1 (D. Colo. Dec. 7, 2010) (citing *Vanderhurst v. Colo. Mountain Coll. Dist.*, 16 F. Supp. 2d 1297, 1303 (D. Colo. 1998)).

IV.   ARGUMENT

    A.   <u>Illegality/Unclean Hands/Estople Affirmative Defenses</u>

Defendant asserts that it is unclear at this stage whether Plaintiff's investigators may have violated state or federal law with regard to the collection of the data information included in the swarm identification of Plaintiff's IP address. Plaintiff's identification of Defendant as the "most likely" infringer based Mr. Feiser's computer forensic analysis raises the question as to whether Mr. Feiser (a computer forensic expert) is required to maintain a professional license in the State of Michigan under Section 6(1)(f)(iv) of the Professional Investigator Act. See MCL 338.821 et al. According to MCL 338.822, any individual engaged in the collection, investigation, analysis and scientific examination of data held on, or retrieved from a computer, computer network, or any combination thereof must maintain a Private Investigator's license in order to perform such activities in the State of Michigan. The failure to do so constitutes a felony punishable by imprisonment of not more than four years or a fine of not more than $5,000.00 or both. MCL 228.823(3)   In the present case, it appears Mr. Feiser (who is not a licensed investigator in

Michigan) actions in in gathering and identifying Mr. Miller's computer IP address were illegal thereby constituting an affirmative defense of illegality and/or unclean hands.

In addition, the acts of Plaintiff's investigator may also violate the Pen Register Act. Under 18 USC 3121, it is a federal misdemeanor to "install or use a pen register or a trap and trace device without first obtaining a court order..." A pen register keeps track of the phone numbers of outgoing calls, and a trap & trace device tracks incoming numbers. These devices differ from wiretaps in that wiretaps will record the content of a communication, while a pen register device records only the number. The Patriot Act expanded the definition of both devices to include the "originating number or other dialing, routing, addressing, and signaling information" of "wire or electronic communications." The expanded definition includes IP addresses. The express intent of the change was to make clear that prosecutors can get warrants for IP addresses, and there are several opinions out there about US attorneys applying for a pen register warrant for internet tracking. See *In re Application for use of a pen register* http://scholar.google.com/scholar_case?case=1569736820765124646; but see *Capitol Records v. Thomas-Asset*, http://scholar.google.com/scholar_case?case=16829082124742414576 (no Pen Register Act violation because IP address is transmitted in metadata, which is the content of the communication rather than a numerical identifier of the source of the information).

According to the Feiser declaration, Plaintiff's "scan" the net for BitTorrent activity and record the IP addresses. Based on the declaration it is clear that they are seeking the hash numbers of their works, i.e., Feiser is initiating the communication (by searching for Malibu titles) and then tracking the IP addresses of the users that responds with pieces of Malibu works –precisely the type of activity made illegal under the act. In other words, Plaintiff is doing exactly what the act says you need a court order for, and which the government can only do with

a warrant. Accordingly, there are genuine issues with regard to the viability of the affirmative defenses 4, 5, and 11.

      B.    <u>Implied License/Participation, Consent, Acquiescence Affirmative Defenses</u>

In the present case, Plaintiff's so-called investigators (i.e. IPP) appear to be actively involved in the dissemination of the copyrighted materials that they are seeking to protect. The methodology by which they are able to identify suspected infringers requires that they participate in the same swarm participants that they are attempting to identify. As a swarm participant, Plaintiff's investigators (based on a their own description) are both simultaneously acquiring and disseminating the copyrighted material (*Functional Description of IPP Tracker Technology Docket Entry 3-2*) In order to facilitate its process of detection, IPP is involved in making the Plaintiff's media content available to the suspected infringers via a digital "honey pot," whereby they represent (via a hash bit identifier) that they in possession of at least 50% of the tile being sought at any given time during the torrent swarm exchange. Accordingly, this raises an issue as to whether Plaintiff (through its agents) are making the works available through an implied license.

Furthermore, it is not known at this point whether Plaintiff participated in any other actions or activities by which the same video works were placed in the public forum either as "teasers," samples, thumbnails, or other format in which Plaintiff knew that members of the public would have their express or implied permission to stream, view, download and/or exchange the same video works on open internet sites promoting their works. Further inquiry into the full scope of the Plaintiff's business model and participation with other vendors or websites would be necessary to determine issues as to whether the nature of Plaintiff's

distribution of its content would give rise to a claim that there was an implied license, consent, or acquiescence with regard to the exchange and/or distribution of their content.

V.	CONCLUSION

The foregoing affirmative defenses raised by Defendant are warranted by existing law and supported by factual arguments along with reasonable inferences. Accordingly, Defendant respectfully requests that this Court dismiss Plaintiff's motion and allow the reaming affirmative defenses to stand.

Dated: October 9, 2013		s/ John T. Hermann
						JOHN T. HERMANN (P-52858)
						Counsel for Defendant
						2684 West Eleven Mile
						Berkley, MI 48072
						(248) 591-9291

## **CERTIFICATE OF ELECTRONIC SERVICE**

I hereby certify that I electronically filed the foregoing paper with the Clerk of the Court with the ECF system, which will send notification of each filing to the following:

Paul J. Nicoletti, Esq.

| | |
|---|---|
| Dated: October 9, 2013 | s/ John T. Hermann<br>JOHN T. HERMANN (P-52858)<br>Counsel for Defendant<br>2684 West Eleven Mile<br>Berkley, MI 48072<br>(248) 591-9291 |

INDEX OF EXHIBITS

| Identifier | Title |
|---|---|
| 1 | Opinion and Order Denying Plaintiff's Motion to Strike Affirmative Defenses |