**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**

| | |
|---|---|
| MALIBU MEDIA, LLC, ) | |
| ) | |
| Plaintiff, ) | Civil Case No. 2:13-cv-12197-GAD-PJK |
| ) | |
| v. ) | |
| ) | |
| JASON PONTELLO, ) | |
| ) | |
| Defendant. ) | |

**PLAINTIFF'S REPLY IN FURTHER SUPPORT OF ITS MOTION**
**TO STRIKE AFFIRMATIVE DEFENSES**

**I.   INTRODUCTION**

Each of Defendant's Affirmative Defenses is insufficient and should be stricken. Even a cursory review of Defendant's Affirmative Defenses demonstrates that each one is conclusory and inadequately pled. Without a single factual allegation in support of any of the affirmative defenses and having failed to plead the necessary elements of each, Defendant's Affirmative Defenses should be stricken. As pled, the relevant scope of discovery cannot be ascertained and as such, allowing Defendant's baseless affirmative defenses to survive would prejudice Plaintiff. Plaintiff would be required to do a significant amount of unnecessary work in attempting to "ascertain[] which defenses are truly at issue and which are merely asserted without factual basis[.]" *Safeco Ins. Co. of Am. v. O'Hara Corp.*, 2008 WL 2558015 at *1 (E.D. Mich. 2008) (granting motion to strike affirmative defenses).

Defendant's Response to Plaintiff's Motion to Strike improperly attempts to make up for his deficient pleadings by raising new arguments and purported factual assertions not previously alleged in his Answer and Affirmative Defenses. Further, Defendant attempts to distract the

1

Court by engaging in a lengthy irrelevant discussion regarding Plaintiff's investigator. Defendant should amend his affirmative defenses if he wishes to pursue these new speculative arguments, not proffer them for the first time in response to Plaintiff's Motion to Strike.

Regardless, Defendant's arguments fail.[1] First, IPP, Plaintiff's investigator, is a legitimate company that uses proprietary software to detect BitTorrent copyright infringement. Indeed, both Tobias Fieser and Michael Patzer (who created the proprietary software used by IPP) testified in June at the first ever BitTorrent copyright infringement case to reach trial. *See Malibu Media, LLC v. John Does 1, 6, 13, 14,* 2013 WL 3038025, *1 (E.D. Pa. June 18, 2013). Defendant's false statements and attempts to impugn Plaintiff's investigator are baseless and irrelevant. Additionally, Plaintiff's investigator has not violated either state or federal law in collecting Defendant's IP address. For the foregoing reasons, as explained more fully below, this Court should grant Plaintiff's Motion to Strike Defendant's insufficient Affirmative Defenses.

## II. ARGUMENT

### A. Defendant's "Concerns" About Plaintiff's Investigator Are Irrelevant and Immaterial to the Resolution of Plaintiff's Motion

Defendant dedicates a substantial amount of his Response to questioning Plaintiff's investigator. Aside from asserting numerous falsehoods, as explained in detail below, Defendant's discussion has no bearing on the determination of Plaintiff's Motion and Plaintiff's demonstration that Defendant's affirmative defenses are insufficient. Defendant's tangent is a red herring intended to distract and mislead the Court.

---

[1] Defendant's Response does not address any of Plaintiff's arguments aimed at striking Defendant's insufficient and baseless First Affirmative Defense (Contributory Negligence) or Fifth Affirmative Defense (Prior License). Accordingly, Plaintiff assumes Defendant does not take issue with its arguments and agrees that striking those affirmative defenses is appropriate.

2

Notwithstanding the foregoing, Defendant suggests that IPP International UG ("IPP") (1) may not exist; (2) if it does exist is the same as the German investigators Guardaley; and (3) that the State Court of Berlin found flaws regarding Guardaley's technology. Defendant sets forth these conspiracy theories with no support. First, IPP is a real entity. As mentioned above, an employee from IPP recently testified at the Bellwether Trial in the Eastern District of Pennsylvania. In that case, the Honorable Judge Baylson made an audio recording of the trial in which testimony related to IPP's software, technology, and methods was relayed by Mr. Fieser personally and the creator of IPP's software, Michael Patzer. *See Malibu Media, LLC v. John Does 1, 6, 13, 14, and 16*, 2:12-cv-02078-MMB [CM/ECF 195] (E.D. Pa. June 11, 2013). After the conclusion of trial, in which all three defendants were adjudged liable and damages were entered in an amount of $112,500 plus attorneys' fees and costs against Defendant Bryan White, Judge Baylson noted that "Malibu had expended considerable effort and expense to determine the IP addresses of the infringing parties, and the technology employed by its consultants—both of whom were located in Germany and who testified at the trial of June 10, 2013—was valid." *Malibu Media, LLC v. John Does 1, 6, 13, 14*, 2013 WL 3038025, *2 (E.D. Pa. June 18, 2013). Judge Baylson concluded by stating that "[t]he evidence that Malibu presented at trial was persuasive as to the fact that it had suffered real damages as a result of illegal downloading of its movies through BitTorrent." *Id.*, at *8.

The evidence and testimony in this case will be similar and equally persuasive. Plaintiff has expended the same effort and expense and utilized the same valid technology as in the Bellwether trial. Defendant cannot in good faith pursue any affirmative defense which rests on frivolous claims, such as: "It is unclear whether IPP even exists." *See* Defendant's Response, at p. 4.

Next, to the best of undersigned's and Plaintiff's knowledge, IPP and Guardaley have no common ownership or clients. Occasionally, the two companies may work with each other, mainly because they are in the same common field and location. To the best of undersigned and Plaintiff's knowledge, Defendant misidentifies Guardaley's owner as Patrick Achache, further demonstrating that the assertion is based simply on conjecture. The German investigative company Guardaley has not reinvented itself as IPP.

Finally, Defendant misstates the proceedings which took place in Berlin regarding Guardaley's technology. The findings Defendant suggests were *not* proven in court or by a third party expert but were merely alleged by a competitor. The judgment which Defendant refers to is not legally binding, and most importantly Guardaley's case has no bearing on IPP. Plaintiff can provide Defendant with a "packet sniffer" demonstrating the piece of the BitTorrent files that the Defendant was distributing. As Plaintiff's experts will testify, the packet sniffer and direct TCP/IP connection simply cannot be manipulated or spoofed. Put simply, the detection technology employed by IPP is not a concern of Plaintiff's. It has been independently tested and it is infallible such that the process cannot be impeached. Plaintiff will prove these points just as it did in the Eastern District of Pennsylvania.

### B. Plaintiff's Investigator Did Not Violate State Law

Defendant attempts to claim that Plaintiff's investigator violated the Michigan Professional Investigator Act by its "collection, investigation, analysis and scientific examination of data held on, or retrieved from a computer, computer network, or any combination thereof," in violation of Mich. Comp. Laws Ann. § 338.823. This exact argument was asserted by the defendant in *Capitol Records Inc. v. Thomas-Rasset*, 79 Fed. R. Evid. Serv. 1203 (D. Minn. 2009), a well-known copyright infringement case involving peer-to-peer file sharing and similar

4

investigation methods used by the plaintiff. There, the Court held that the Minnesota Private Detectives Act had no application because the plaintiff's investigator was located outside of the state, had no employees within the state, conducted no activities within the state, paid no taxes within the state, and had no agent within the state.

> The Court concludes that MediaSentry is not subject to the MPDA. Based on the language of the MPDA, the Act does not apply to persons or companies operating outside of the state of Minnesota . . . Additionally, there is a general presumption that Minnesota statutes do not apply extraterritorially . . . <u>Merely monitoring incoming internet traffic sent from a computer in another state is insufficient to constitute engaging in the business of private detective</u> within the state of Minnesota.

*Id. See also Arista Records LLC v. Does 1-27*, 584 F. Supp. 2d 240, 257 (D. Me. 2008) (peer-to-peer file sharing case denying argument that because plaintiff's investigator was not licensed in Maine, the court should not have relied on the information it gathered in issuing expedited discovery order.)

Similarly, here Plaintiff's investigator does not operate within the state of Michigan, has no employees within the state, does not conduct any activities within the state, pays no taxes within the state, and has no agent in the state. Plaintiff's investigator merely monitored incoming internet traffic sent from Defendant's computer. *See Amended Complaint* at ¶¶ 16, 17, and 19 ("IPP Limited downloaded from Defendant one or more bits of each file . . . At no time did IPP Limited upload Plaintiff's copyrighted content to any other BitTorrent user.") Plaintiff's investigator is not required to be licensed within the state of Michigan and has not violated any state law.

### C. Plaintiff's Investigator Did Not Violate the Federal Pen Register Act

Defendant next attempts to argue that Plaintiff's investigator violated the federal Pen Register Act, another argument which was expressly denied in *Thomas-Rasset*. In *Thomas-Rasset* the court denied defendant's argument for three reasons:

> [First] the Pen Register Act has no application here because the IP address recorded . . . was part of the content of the communication. The metadata that is transmitted . . . always includes the IP address. [Second], the Pen Register Act cannot be intended to prevent individuals who receive electronic communications from recording the IP information sent to them . . . [Third,] the Pen Register Act does not bar recordings of the contents of communications that are made with the consent of one of the parties to the communication.

*Id.*

Here, the IP Address received by Plaintiff's investigator was part of the content of the communication, so the Pen Register Act has no application. Additionally, Defendant utilized other's computers to download the file and also allowed others, including Plaintiff's investigator, to connect to his computer so that he could transmit pieces of Plaintiff's copyrighted works to third parties. Thus, by participating in the BitTorrent swarm Defendant consensually engaged in the transaction with Plaintiff's investigator. And, "the IP addresses were communicated as part of the packets Defendant's computer sent to [Plaintiff's investigator's] computer. [Plaintiff's investigator], as a party to that communication, simply recorded the information transmitted to it from [Defendant's] computer." *Id.* Because the IP Address information was voluntarily sent to Plaintiff's investigator, the Pen Register Act cannot serve to prevent Plaintiff's investigator from recording that information. *See also Columbia Pictures, Inc. v. Bunnell*, 245 F.R.D. 443, 450 (C.D. Cal. 2007) (BitTorrent copyright infringement case holding that "[b]ecause the May 29 Order requires the production of the *contents* of communications . . . the Pen Register Statute does not bar the ordered discovery.") (Emphasis added.)

Accordingly, Defendant's spurious Affirmative Defenses should be stricken as insufficient and contrary to both the relevant law and facts. *See Kelley v. Thomas Solvent Co.*, 714 F. Supp. 1439, 1442 (W.D. Mich. 1989) ("the motion to strike under Rule 12(f) is to 'avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial.'").

### D. Plaintiff Does Not Seed Its Own Works

Defendant's "Implied License/Participation, Consent, Acquiescence" affirmative defenses are also based on falsehoods with no chance of success so discovery towards that end would be futile. Defendant's argument that Plaintiff's investigators "appear to be actively involved in the dissemination of the copyrighted materials" is belied by the face of the Amended Complaint itself. Defendant's Response, at p. 8. Plaintiff's Amended Complaint expressly states, "[a]t no time did IPP Limited upload Plaintiff's copyrighted content to any other BitTorrent user." *Id.* at ¶ 19. *See also Malibu Media, LLC v. John Does 1, 6, 13, 14, and 16*, 2:12-cv-02078-MMB [CM/ECF 195] Audio Recording of Testimony of Michael Patzer at approx. 00:59:15 - 01:02:20 (E.D. Pa. June 11, 2013). Additionally, Plaintiff's investigator states "At no point did IPP distribute any of Plaintiff's copyrighted works. Our software is designed in such a way to prevent any distribution of copyrighted content." *See* CM/ECF 3-1, at p. 3. Indeed, Plaintiff's investigator's technology is a passive recipient of data that does not distribute Plaintiff's works and is, in fact, incapable of doing so.

Further, Defendant suggests that if Plaintiff provides "teasers, samples, [or] thumbnails" to the public Defendant may have been granted an implied license to download and distribute Plaintiff's works. This is wrong. First, this case does not involve "teasers, samples, or thumbnails" of Plaintiff's works but instead, full copies of Plaintiff's protected movies. Plaintiff

7

has alleged that Defendant infringed thirty-three (33) copyrighted movies using the BitTorrent protocol between March 25, 2012 and April 12, 2013. *See* Exhibit A to Plaintiff's Amended Complaint, at CM/ECF 6-1.

To the extent that samples of Plaintiff's works are provided to the public, Defendant still has no basis to allege the defense of implied license. As Plaintiff's Motion makes clear, Defendant cannot plead a single element necessary in order to find the existence of an implied license. *See* Plaintiff's Motion, pp. 6-7. And, providing samples of Plaintiff's works through authorized channels does not negatively affect Plaintiff's ability to sue infringers who use the BitTorrent protocol to unlawfully download and distribute copies of its movies. Indeed, Plaintiff's actions are consistent with those of record companies and recording artists. The popular on-line retailer Amazon.com provides free mp3 song downloads from selected artists, the goal being to entice listeners to purchase full albums or further downloads. In providing these downloads for free to the general public, the copyright holder has not forfeited or otherwise negatively affected its ability to sue for infringement of the work. The same is true of any samples that Plaintiff may provide. Accordingly, Defendant's affirmative defenses cannot succeed and should be stricken.

### III. <u>CONCLUSION</u>

For each of the foregoing reasons, Plaintiff respectfully requests this Court grant Plaintiff's Motion to Strike Defendant's Affirmative Defenses.

Dated: October 16, 2013

Respectfully submitted,

NICOLETTI & ASSOCIATES, PLLC

By: /s/ *Paul J. Nicoletti*
Paul J. Nicoletti, Esq. (P44419)
36880 Woodward Ave, Suite 100
Bloomfield Hills, MI 48304
Tel: (248) 203-7800
Fax: (248) 203-7801
E-Fax: (248) 928-7051
Email: paul@nicoletti-associates.com
*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on October 16, 2013 I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and that service was perfected on all counsel of record and interested parties through this system.

By: /s/ *Paul J. Nicoletti*