UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MALIBU MEDIA, LLC,

        Plaintiff,

                                      Case No. 13-12197
                                      HON. GERSHWIN A. DRAIN

v.

JASON PONTELLO,

        Defendant.

_____/

## ORDER GRANTING PLAINTIFF'S MOTION TO STRIKE DEFENDANT'S AFFIRMATIVE DEFENSES [#12]

### I.      INTRODUCTION

On May 17, 2013, Plaintiff, Malibu Media ("Malibu"), filed the present action against Defendant, Jason Pontello ("Pontello"), alleging copyright infringement based on unauthorized copying of Malibu's motion pictures in violation of the United States Copyright Act of 1976, *as amended*, 17 U.S.C. §§ 101 *et seq.* ("Copyright Act"). Presently before the Court is Plaintiff's Motion to Strike Affirmative Defenses [#12], filed on October 7, 2013. On October 9, 2013, Pontello filed his Response in Opposition, and Malibu filed a Reply Brief on October 16, 2013. Upon review of the parties' briefing, this Court GRANTS Malibu's Motion.

### II.     FACTUAL BACKGROUND

Malibu maintains that Pontello is liable for copyright infringement based on the

1

unauthorized copying of 33 of its adult content video works in violation of the Copyright Act. Malibu's works were made available for distribution through a series of BitTorrent transactions, conducted using a computer accessing the internet, and identified through an Internet Protocol ("IP") address assigned to Pontello's internet account. On August 23, 2013, Malibu filed its Amended Complaint. *See* Dkt. No. 6. On September 16, 2013 Pontello filed his Answers to Malibu's Amended Complaint, asserting thirteen affirmative defenses against the Amended Complaint. Malibu moves to strike the following defenses: (1) Defendant's First Affirmative Defense (Contributory Negligence), (2) Second Affirmative Defense (Estoppel), (3) Third Affirmative Defense (Illegality and/or Fraud), (4) Fourth Affirmative Defense (Illegality of Plaintiff's Actions or Methods), (5) Fifth Affirmative Defense (Prior License), (6) Ninth Affirmative Defense (Unclean Hands), (7) Eleventh Affirmative Defense (Implied License), and (8) Twelfth Affirmative Defense (License, Consent, and Acquiescence). *See* Dkt. No. 10.

## III.    LEGAL ANALYSIS

### A.    Standard of Review

The Court may strike from a pleading any "insufficient defense or any redundant, immaterial, impertinent, or scandalous matter," FED. R. CIV. P. 12(f), in order to "avoid the expenditure, time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Kennedy v. City of Cleveland*, 797 F.2d 297, 305 (6th Cir. 1986). An affirmative defense has been found "insufficient if it is not recognized as a defense to the cause of action." *Kelley v. Thomas Solvent Co.*, 714 F. Supp. 1439, 1442 (W.D. Mich. 1989). Additionally, "a wholly conclusory affirmative defense is not sufficient," as a defendant must plead ample "facts to demonstrate a plausible affirmative defense, or

2

one that has a 'reasonably founded hope' of success." *United States v. Quadrini*, No. 2:07-cv-13227, 2007 WL 4303213, *1, *4 (E.D. Mich. Dec. 6, 2007).

Opposing counsel must typically respond to affirmative defenses with interrogatories or other discovery aimed at ascertaining which defenses are truly at issue. *Shinew v. Wszola*, No. 08-14256, 2009 WL 1076279, *1, *5 (E.D. Mich. Apr. 21 2009). Case law has established a three part test to determine whether a federal court should strike an affirmative defense:

> (1) the matter must be properly pleaded as an affirmative defense; (2) the matter must be adequately pleaded under the requirements of Federal Rules of Civil Procedure 8 and 9; and (3) the matter must withstand a Rule 12(b)(6) challenge.

*F.T.C. v. Mazzoni & Son, Inc.,* No. 06-15766, 2007 WL 2413086, *1, *2 (E.D. Mich. Aug. 14, 2007). Striking affirmative defenses streamlines the litigation and conforms to FED. R. CIV. P. 1, which provides that the Rules should be interpreted and "administered to secure the just, speedy, and inexpensive determination of every action and proceeding." *Id.*

## B.   DEFENDANT'S AFFIRMATIVE DEFENSES INSUFFICIENCIES

Malibu argues that Pontello's affirmative defenses should be stricken due to their insufficiencies. Malibu begins by arguing that Pontello's First Affirmative Defense, Contributory Negligence, has no application to the case, as Malibu did not plead negligence and can therefore not be found to be contributorily negligent. "Contributory negligence is a conduct on the part of the plaintiff which falls below the standard to which he should conform for his own protection, and which is a legal contributing cause co-operating with the negligence of the defendant in bringing about the plaintiff's harm." *Restatement (Second) of Torts § 463 (1965).*

Malibu argues Pontello's Second Affirmative Defense, Estoppel, should be stricken

3

because it is conclusory and contrary to the facts. Estoppel requires that "the party to be estopped must have used conduct or language amounting to a representation of material fact" and "the party asserting estoppel must have detrimentally and justifiably relied on the representation." *Thomas v. Miller*, 489 F.3d 293, 302 (6th Cir. 2007). Malibu maintains that it did not use any conduct or language that amounted to a representation of material fact on which Pontello relied in committing the alleged infringement and Pontello alleges no facts to the contrary. Prior to the initiation of this lawsuit, Malibu and Pontello were complete strangers.

Malibu addresses Pontello's Third Affirmative Defense, Illegality and/or Fraud, and Fourth Affirmative Defense, Illegality of the Claimed Actions or Methods, in conjunction, and maintains that both should be stricken because of their conclusory nature. Specifically considering the FED. R. CIV. P. 9(b) requirement that fraud must be plead "with particularity [as to] the circumstances constituting fraud," Malibu argues that Pontello's Affirmative Defenses lack the proper factual support to satisfy the liberal pleading requirements of FED. R. CIV. P. 8 and 9.

Malibu asserts that Pontello's Fifth Affirmative Defense, Prior License, should be stricken because Malibu and Pontello never interacted prior to this lawsuit - making it impossible for Malibu to have granted Pontello a license to download and distribute the subject works through the BitTorrent protocol. Furthermore, Malibu maintains that they have never authorized anyone ever to download and distribute its works through BitTorrent.

Malibu argues Pontello's Ninth Affirmative Defense, Unclean Hands, should be stricken because Pontello fails to allege any behavior by Malibu that would constitute unclean hands or a detriment caused by unclean hands. "The concept of unclean hands

4

may be employed by a court to deny injunctive relief where the party applying for such relief is guilty of conduct involving fraud, deceit, unconscionability, or bad faith related to the matter at issue to the detriment of the other party." *Performance Unlimited, Inc. v. Questar Publishers, Inc.*, 52 F.3d 1373, 1383 (6th Cir. 1995). However, the doctrine of unclean hands "requires that the alleged misconduct on the part of the plaintiff relate **directly** to the transaction about which the plaintiff has made a complaint." *Id.* (emphasis added). In the instant case, Pontello's affirmative defense provides no notice to Malibu as to the basis for the defense.

Malibu alleges that Pontello's Eleventh Affirmative Defense, Implied License, should be stricken because it is insufficient and directly contrary to the pleadings. Under the Copyright Act, a court may find that a nonexclusive license has been implied by either the conduct of, or an oral agreement between, the parties involved. *Johnson v. Jones*, 149 F.3d 494, 500 (6th Cir. 1998). However, implied licenses "will only be found in narrow circumstances where 'one party created a work at the other's request and handed it over, intending that the other copy and distribute it,'" *Tang v. Putruss*, 521 F. Supp. 2d 600, 608 (E.D. Mich. 2007), consequently establishing a "meeting of the minds." *Ulloa v. Universal Music and Video Distrib. Corp.*, 303 F. Supp. 2d 409, 416 (S.D.N.Y. 2004). In the instant case, Pontello cannot allege that he requested the works in question from Malibu, because prior to this lawsuit the parties were total strangers. Additionally, given the context of unauthorized file sharing, Pontello cannot establish that Malibu created the work and delivered it to Pontello pursuant to a "meeting of the minds." Clearly Malibu did not intend for Pontello to copy and distribute its work, since it is now suing Pontello for copyright

5

infringement.[1]

Finally, Malibu argues that Pontello's Twelfth Affirmative Defense, License, Consent, and Acquiescence should be stricken because Malibu did not consent to Pontello's infringement, nor did Malibu license its work to Pontello. Malibu maintains that Pontello cannot in good faith argue to the contrary. In order to prevail on his acquiescence defense, Pontello must produce evidence that:

> (1) Plaintiff actively represented that he would not assert a right or claim; (2) the delay between the active representation and assertion of the right or claim was not excusable; and (3) the delay caused the defendant undue prejudice.

*Thornton v. J Jargon Co.*, 580 F. Supp. 2d, 1261, 1282 (M.D. Fla. 2008). Pontello has not alleged the necessary aforementioned elements of the defense in the instant case, nor could he since Malibu never actively represented to Pontello that it would not assert a right or claim.

## C.    DEFENDANT'S RESPONSE

Pontello's Response primarily focuses on deflecting this Court's attention away from the inadequacies of his affirmative defenses and onto irrelevant and unsupported allegations against Malibu. Rather than respond to Malibu's individualized allegations of insufficiency for each affirmative defense in question, Pontello addresses his defenses in two large groups - first, the "Illegality/Unclean Hands/Estoppel Affirmative Defenses," and second, the "Implied License/Participation, Consent, Acquiescence Affirmative Defenses."

Pontello's primary argument in response to his Illegality/Unclean Hands/Estoppel

---

[1] "Nonexclusive licenses may be granted if the copyright owner does not object to the putative infringer's use of copyrighted material." *Luar Music Corp. v. Universal Music Group, Inc.,* 861 F. Supp. 2d 30, 37 (D.P.R. 2012).

Affirmative Defenses is that Malibu may have violated state or federal law with regard to the collection of the data information included in the swarm identification of Pontello's IP address. In support, Pontello points to Malibu's "unconvincing" claim that Pontello was the "most likely" infringer because he was the owner of the IP address[2] and that Mr. Feiser, the computer forensic expert responsible for gathering and identifying Pontello's computer IP address, was inappropriately operating in Michigan without a proper professional license. Additionally, Pontello alleges that Malibu's investigator may have violated the Pen Register Act, 18 U.S.C. § 3121. Under the Pen Register Act, it is a federal misdemeanor to "install or use a pen register or a trap and trace device without first obtaining a court order." The Patriot Act expanded the definition of a "pen register device" to include devices such as IP addresses. Consequently, Pontello argues that Malibu violated the Pen Register Act by scanning Malibu titles and then tracking the IP addresses of the users that respond with pieces of Malibu work without a court order.

Pontello argues that his Implied License/Participation, Consent, Acquiescence Affirmative Defenses are appropriate because Malibu's investigators made the works in question available under implied licenses. First, Pontello asserts that the methodology used by Malibu's investigators, IPP International UG ("IPP"), caused them to construct a digital "honey pot," whereby the "owner" represents he is in possession of at least 50% of the tile being sought during the torrent swarm exchange. Second, Pontello suggests that it is possible that Malibu placed some of the video works in question out in the public as teasers, samples, thumbnails, or other format in which Malibu knew that members of the

---

[2] Pontello insinuates that Malibu is bringing a lawsuit against the wrong individual.

7

public would have their express or implied permission to stream, view, download, or exchange.

Malibu's reply establishes that IPP did not violate the Michigan Professional Investigatory Act by its collection, investigation, analysis and scientific examination of data held on, or retrieved from a computer, computer network, or any combination thereof in violation of MICH. COMP. LAWS. ANN. § 338.823. In *Capitol Records Inc. v. Thomas-Rasset*, No. 06-1479, 2009 WL 1664468, *1, *2 (D. Minn. Jun 11, 2009), a copyright infringement case involving peer-to-peer file sharing and similar investigation methods, the court held that the Minnesota Private Detectives Act had no application because the plaintiff's investigator was located outside of the state, had no employees within the state, conducted no activities within the state, paid no taxes within the state, and had no agent within the state. The same is true in the instant case. IPP does not operate within the state of Michigan, has no employees within the state, does not conduct any activities within the state, pays no taxes within the state, and has no agent in the state. The investigator was merely responsible for monitoring incoming interest traffic sent from Pontello's computer. Consequently, Malibu's investigator is not required to be licenced within the state of Michigan and has not violated any state law.

Similarly, IPP did not violate the Federal Pen Register Act. *Capitol Records* also addressed the Federal Pen Register Act where the court determined:

> [First] the Pen Register Act has no application here because the IP address recorded...was part of the content of the communication. The metadata that is transmitted...always includes the IP address. [Second], the Pen Register Act cannot be intended to prevent individuals who receive electronic communications from recording the IP information sent to them...[Third,] the Pen Register Act does not bar recordings of the contents of the communications that are made with the consent of one of the parties to the communication.

8

*Capitol Records,* 2009 WL 1664468, at *3. In the instant case, the IP address received by IPP was part of the content of the communication, so the Pen Register Act has no application. By participating in the BitTorrent swarm Pontello consensually engaged in the transaction with IPP, and communicated his IP address as part of the packet his computer sent to IPP. Because the IP address was voluntarily sent, the Pen Register Act cannot prevent Malibu's investigator from recording that information.

Malibu vehemently refutes Pontello's argument that its investigators are "involved in the dissemination of the copyrighted materials." Malibu's Amended Complaint expressly states, "[a]t no time did IPP Limited upload Plaintiff's copyrighted content to any other BitTorrent user." Additionally IPP has confirmed that they did not distribute any of Malibu's copyrighted works as their software is "specifically designed in such a way to prevent any distribution of copyrighted content." Furthermore, this case does not involve "teasers, samples, or thumbnails," but full copies of Malibu's protected movies. To the extent that samples of Malibu's works are made available to the public, Malibu argues that Pontello still cannot plead a single element necessary in order to find the existence of an implied license. Providing samples of its work through authorized channels does not negatively affect Malibu's ability to sue infringers who use BitTorrent protocol to unlawfully download and distribute copies of its movies.[3] When free downloads are provided to the general public, the copyright holder has not forfeited or otherwise negatively affected its ability to sue for infringement of the work.

---

[3] Malibu's samples are similar to Amazon.com providing free mp3 song downloads from selected artists with the goal being to entice listeners to purchase full albums or further downloads.

While in his Response, Pontello questions the validity and existence of IPP, this discussion is irrelevant to the issues raised herein and acts as a "red herring" rather than a substantive argument relating to the use of affirmative defenses. Additionally, Malibu quashes Pontello's question of IPP's existence by pointing out that an employee from IPP recently testified at the Bellwether Trial in the Eastern District of Pennsylvania and by providing evidence of IPP's existence.

III.   **CONCLUSION**

IT IS ORDERED that Plaintiff's Motion to Strike Defendant's Affirmative Defenses [#12] is GRANTED.

SO ORDERED

Dated: November 19, 2013                      /s/ Gershwin A. Drain_____
                                              GERSHWIN A. DRAIN
                                              UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
November 19, 2013, by electronic and/or ordinary mail.

/s/ Tanya Bankston
Deputy Clerk